**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARMANDO JOSE SOSSA,
*Petitioner-Appellant*,

v.

RALPH M. DIAZ, Warden,
*Respondent-Appellee*.

No. 10-56104

D.C. No.
2:08-cv-01549-
SVW-FMO

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
March 4, 2013—Pasadena, California

Filed September 10, 2013

Before: Richard A. Paez and Paul J. Watford, Circuit
Judges, and Matthew F. Kennelly, District Judge.[*]

Opinion by Judge Paez

---

[*] The Honorable Matthew F. Kennelly, District Judge for the U.S.
District Court for the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's dismissal as untimely of California State prisoner Armando Jose Sossa's habeas corpus petition challenging the constitutionality of his second degree robbery conviction.

The panel held that Sossa is entitled to equitable tolling on the ground that he relied on the assigned magistrate judge's order extending the filing deadline beyond the statutory limitation. The panel also held that Sossa sufficiently alleged that he was precluded from filing his habeas petition within the time period provided in the magistrate judge's order to warrant further development of the record. The panel remanded to the district court for further proceedings to determine whether Sossa is eligible for equitable tolling on the ground that he was unable to utilize the prison's law library and other resources, and also whether he was entitled to the statutory tolling to which the magistrate judge assumed he was for purposes of his ruling.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jan B. Norman, Los Angeles, California, for Petitioner-Appellant.

Michael Katz, Deputy Attorney General, State of California, Los Angeles, California, for Respondent-Appellee.

**OPINION**

PAEZ, Circuit Judge:

State prisoner Armando Jose Sossa, proceeding *pro se*, filed a petition for a writ of habeas corpus in the district court challenging the constitutionality of his second degree robbery conviction. The district court dismissed the petition on the ground that it was untimely. We hold that Sossa is entitled to equitable tolling on the ground that he relied on the assigned magistrate judge's order extending the filing deadline beyond the statutory limitation. We further hold that Sossa has sufficiently alleged that he was precluded from filing his habeas petition within the time period provided in the magistrate judge's order to warrant further development of the record. Therefore, we reverse the district court's judgment and remand for further proceedings.

**I. BACKGROUND**

Sossa was convicted of second degree burglary in 2004. He was sentenced to thirty-five years to life, and the California Court of Appeal affirmed his conviction and sentence. On November 2, 2005, the California Supreme Court denied Sossa's petition for review. For purpose of the

one-year limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A), Sossa's conviction became final ninety days later on January 31, 2006. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

On October 22, 2006, Sossa filed a *pro se* petition for a writ of habeas corpus in the Los Angeles Superior Court seeking to vacate his conviction and sentence, which was denied in November 2006.[1] In April 2007, he next filed a *pro se* habeas petition in the California Court of Appeal, which was denied in May 2007. Several months later, in August 2007, Sossa filed a *pro se* habeas petition in the California Supreme Court, which was denied on February 13, 2008.

On February 24, 2008, Sossa filed a *pro se* petition for a writ of habeas corpus in the district court. To file his petition, Sossa used the form petition provided by the district court. In the section of the form petition where specific claims for relief must be enumerated, Sossa wrote "See Attached Petition" but failed to include any attachment. On March 12, 2008, the magistrate judge dismissed the petition, for failure to state a claim, with leave to amend within thirty days (by April 11, 2008).

---

[1] The district court—and the parties—assumed that Sossa "constructively" filed each petition on the date that he delivered the petition to the prison authorities. We see no reason not to apply this assumption to the dates at issue here. "Under the 'prison mailbox rule' of *Houston v. Lack,* 487 U.S. 266 (1988), a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court." *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001). "[T]he same rule applies to prisoners filing habeas petitions in both federal and state courts." *Id*. at 1223.

On April 6, 2008, Sossa filed a motion for an extension of time to file his First Amended Petition ("FAP"), alleging generally that there were "circumstances out of the control of petitioner which will hamper his ability to make amendments" to the FAP. Three days later, on April 9, 2008, the magistrate judge granted Sossa's motion for an extension of time to amend his petition, setting the new filing deadline as May 9, 2008. On May 5, 2008, Sossa filed a second motion seeking to extend the deadline, stating that "[d]ue to[] circumstances out of the physical control of petitioner such as institutional lock-downs and conflicting library operational hours, petitioner will need" another 30 days to complete and file his FAP. On May 8, 2008, the magistrate judge granted Sossa's motion, setting the new deadline as "**June 9, 2008**," and further stating: "**No further extensions will be granted. Failure to file a [FAP] will result in dismissal of the case**." (bold in original).

Before the June 9 deadline, on June 7, 2008, Sossa filed a motion seeking an additional five-day extension because prison conditions had prevented him from assembling his petition and the necessary facilities would not reopen until June 10—the day after the deadline set by the magistrate judge. The magistrate judge received and rejected Sossa's motion on June 11, 2008, ordering it not to be filed and citing his prior order that "no further extensions will be granted."

Also on June 11, 2008, Sossa filed his FAP. In response, Respondent ("the State") filed a motion to dismiss the petition on the ground that the FAP was untimely. Sossa opposed the motion. The magistrate judge issued a report and recommendation ("R&R") recommending that the FAP be dismissed with prejudice as untimely. He determined that the judgment in Sossa's criminal case became final on January

31, 2006 and AEDPA's one-year statute of limitations expired on January 31, 2007, absent any tolling. He then "assum[ed] without deciding that [Sossa] is entitled to statutory tolling for his complete round of state collateral review from October 22, 2006, to February 13, 2008." "When [Sossa] filed his habeas petition in the Los Angeles County Superior Court on October 22, 2006, 264 days of his one year statute of limitations period had run [since his conviction became final on January 31, 2006]. Accordingly, [Sossa] had until **May 24, 2008**, 101 days after February 13, 2008, to file the instant Petition." (bold in original). He thus concluded that Sossa's original February 24, 2008 petition was timely.

However, the magistrate judge also found that the FAP, filed on June 11, 2008, did not "relate back" to the filing of the original petition because the original petition "failed to set forth any claims for relief."[2] Therefore, he found that the FAP was filed 18 days after the May 24, 2008 deadline and was thus untimely. He further found that Sossa was not entitled to equitable tolling due to prison lock-downs and lack of access to the law library.

Sossa filed a motion seeking discovery that would support his objections to the R&R, which the magistrate judge denied. Without discovery, Sossa filed objections to the R&R. For the first time, he argued that he was entitled to equitable tolling based on his reliance on the magistrate judge's orders extending the habeas filing deadline. The district court adopted the R&R and dismissed the FAP with prejudice. The district court "exercise[d] its discretion and decline[d] to

---

[2] Sossa does not appeal the district court's ruling that his June 11, 2008 FAP does not "relate back" to his February 24, 2008 petition.

consider" Sossa's argument that he relied on the magistrate judge's orders extending the filing deadline. The district court then proceeded to conclude that "even on the merits" Sossa's arguments for equitable tolling fail.[3]

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final judgment of the district court under 28 U.S.C. § 1291. "We review de novo the district court's denial of a habeas corpus petition for failure to comply with the one-year statute of limitations" of AEDPA. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1025 (9th Cir. 2005) (citing *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003)). "If the facts underlying a claim for tolling of the habeas limitations period are undisputed, the question whether the statute of limitations should be tolled is reviewed de novo. But otherwise a district court's findings of fact are reviewed for clear error." *Id*. (citing *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)).

## III. DISCUSSION

A state prisoner must file his federal habeas petition within one year of when his conviction becomes final.

---

[3] The district court denied a certificate of appealability ("COA"), but we granted a COA to address "whether the district court properly dismissed appellant's amended 28 U.S.C. § 2254 petition as untimely." When a COA is granted as to a procedural issue, we have jurisdiction to review that issue even when the COA fails to identify a constitutional issue. *Gonzalez v. Thaler*, 132 S.Ct. 641, 646, 648 (2012). Here, the COA concludes that Sossa's petition "states at least one federal constitutional claim debatable among jurists of reason, including but not limited to whether counsel was ineffective for failing to request a jury instruction on voluntary intoxication."

28 U.S.C. § 2244(d)(1). This one-year statute of limitations may be statutorily tolled. *Id*. at § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

Beyond statutory tolling, federal habeas petitioners may also be entitled to equitable tolling of the statute of limitations. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010) (holding that "§ 2244(d) is subject to equitable tolling in appropriate cases"); *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir.), *cert. denied*, 133 S.Ct. 769 (2012). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Ford*, 683 F.3d at 1237 (quoting *Holland*, 130 S.Ct. at 2562) (internal quotation marks omitted). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id*. (quoting *Holland*, 130 S.Ct. at 2565) (internal quotation marks omitted).

After *Holland*, we have continued to rely on our previous equitable tolling cases in which we held that equitable tolling is available "only when extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time and the extraordinary circumstances were the *cause* of [the prisoner's] untimeliness." *Id.* (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003))) (alterations in *Ford*) (internal quotation marks omitted); *see also Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (citing *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009)). "[T]he

requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)).

Nonetheless, "[g]rounds for equitable tolling under § 2244(d) are 'highly fact-dependent.'" *Laws*, 351 F.3d at 922 (quoting *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam)). Moreover, the Supreme Court has "made clear that often the exercise of a court's equity powers . . . must be made on a case-by-case basis. . . . [We] recognize that courts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 130 S. Ct. at 2563 (internal citations and quotation marks omitted); *see also Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011) (noting that "[l]ike any equitable consideration, whether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas court which may be guided by 'decisions made in other similar cases'" (quoting *Holland*, 130 S. Ct. at 2563)).

Sossa argues that he is entitled to equitable tolling because he (1) relied on the magistrate judge's orders extending the filing deadline beyond AEDPA's limitations period, and (2) was precluded from filing his FAP by prison

lock-downs and limited library access.  We address each argument in turn.

## A.  Reliance on magistrate judge's orders

We hold that Sossa reasonably relied on the magistrate judge's extensions of time to file his habeas petition, and therefore is entitled to equitable tolling from March 12, 2008 (the date on which the magistrate judge first set a deadline for filing a FAP) through at least June 9, 2008 (the date set by the magistrate judge as the final filing deadline).  We reject the State's argument that it was Sossa's duty to investigate how these extensions of time related to AEDPA's statute of limitations.  Before reaching the merits of this issue, we address the State's contention that Sossa waived this argument by failing to raise it until he objected to the magistrate judge's R&R.  We hold that he did not waive the argument and further conclude that because Sossa was a *pro se* petitioner making a novel claim, the district court abused its discretion by declining to consider the argument on the merits.

### 1.  Sossa did not waive his argument.

The State argues that Sossa forfeited his argument—that he relied on the magistrate judge's orders extending the filing deadline—by not raising it in his opposition to the State's motion to dismiss.  The State raised two arguments in its motion to dismiss: (1) that Sossa wasn't "entitled to interval or 'gap' tolling" between November 29, 2006 and April 22, 2007; and (2) that Sossa's FAP claims did not "relate back" to his original habeas petition.  In his opposition to the motion to dismiss, Sossa essentially contested these two arguments and asserted that the State's motion was itself

untimely (as it was filed three days after the court's deadline despite five extensions of time).**[4]** In his opposition to the motion to dismiss, however, Sossa did not argue that he had relied on the magistrate judge's orders as extending the statute of limitations.

In his R&R, the magistrate judge assumed without deciding that Sossa was entitled to statutory tolling, but concluded that the FAP did not relate back to the original petition and was thus untimely by 18 days. In his objections to the R&R, Sossa argued for the first time that he had relied on the magistrate judge's extensions of the filing deadline and assumed that by complying with the extended deadline his FAP would be timely. In adopting the R&R, the district court stated that it was exercising its discretion under *Howell* to "decline to consider the new facts and arguments" that Sossa asserted in his objections. *See United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000). Nonetheless, the district court then proceeded to reject Sossa's argument on the merits.

Assuming without deciding that the district court *actually* exercised its discretion not to address Sossa's new arguments—and merely addressed the merits "in the alternative"—the district court abused its discretion. *See id*. at 622 (emphasizing "that in making a decision on whether to consider newly offered evidence, the district court must

---

**[4]** It is ironic that the State's motion to dismiss for untimeliness was itself untimely. Nonetheless, the district court could have raised the statute of limitations issue *sua sponte*, and therefore the State's untimely motion is of no consequence in this case. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) (holding "that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition").

actually exercise its discretion, rather than summarily accepting or denying the motion").**[5]**

We have repeatedly held that in certain circumstances a district court abuses its discretion when it fails to consider new arguments or evidence proffered by a *pro se* habeas petitioner, like Sossa, in objecting to a magistrate judge's R&R. *See Espinoza-Matthews*, 432 F.3d at 1026 n.4; *Brown v. Roe*, 279 F.3d 742, 745–46 (9th Cir. 2002). In *Brown*, we held that "the district court abused its discretion . . . in failing to consider Brown's equitable tolling claim," *id.* at 745, raised for the first time in Brown's objections to the magistrate judge's R&R, *id.* at 743–44. We reversed the dismissal of Brown's habeas petition for the sufficient reason that "unlike the litigant in *Howell*, who was represented by counsel, Brown was a *pro se* petitioner at all relevant times and was making a relatively novel claim under a relatively new statute." *Id.* at 745. We then cited to a litany of Supreme Court precedent for the proposition that *pro se* petitioners are different. *Id*. In *Espinoza-Matthews*, we reemphasized that a petitioner's *pro se* status requires a district court to consider evidence raised for the first time in objections to an R&R. We held that "[b]ecause Espinoza-Matthews was a pro se petitioner at all relevant times . . . the district court should have exercised its discretion to review the supplemental evidence that Espinoza-Matthews submitted. For that reason we have reviewed that evidence on this appeal." *Espinoza-Matthews*, 432 F.3d at 1026 n.4; *see also Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (relying on *Brown* to hold, in a § 1983 action, that when a *pro se* prisoner plaintiff offered new evidence in objecting to a

---

**[5]** We address the merits of Sossa's argument *infra* in section III.A.2. and reject the district court's alternative merits holding as well.

magistrate judge's R&R, "it would have been an abuse of discretion for the district court not to consider the evidence").

Sossa was a *pro se* petitioner, making a novel claim in an unsettled area of law. We therefore conclude that the district court was obligated to consider Sossa's new equitable tolling argument raised in his objections to the R&R. The argument was not waived and was properly preserved for our review.

### 2.  Sossa is entitled to equitable tolling.

When the magistrate judge denied Sossa's original habeas petition, he granted a date certain by which Sossa could file an amended petition, stating: "If petitioner still wishes to pursue this action, he is granted until **April 11, 2008**, to file a First Amended Petition for Writ of Habeas Corpus." (bold in original).  Sossa then filed two successive motions requesting additional time to file his FAP and the magistrate judge granted each, ordering on May 8, 2008, that "Petitioner shall file his [FAP] no later than **June 9, 2008**," and further providing that: "**No further extensions will be granted. Failure to file a [FAP] will result in dismissal of the case**." (bold in original).

We must determine whether the magistrate judge "affirmatively misled" Sossa. *Pliler v. Ford*, 542 U.S. 225, 234 (2004). In our original opinion in *Pliler*, we had held that a district court was required to give two specific warnings to a *pro se* habeas petitioner who filed a "mixed" petition—one containing exhausted and unexhausted claims. *Ford v.*

*Hubbard*, 330 F.3d 1086, 1092–93 (9th Cir. 2003).**[6]**   The Supreme Court reversed our decision, reasoning that "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler*, 542 U.S. at 231.   The Court cautioned that "to the extent that [one] is concerned with a district court's potential to mislead *pro se* habeas petitioners, the warnings [the habeas petitioner] advocates run the risk of being misleading themselves." *Id*. at 231–32.   The Court remanded the case, directing us to address the "concern that [the petitioner] had been affirmatively misled." *Id*. at 234; *see id*. at 235 (O'Connor, J., concurring) (providing the fifth vote for the majority and stating that "if the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate.  This is a question for the Ninth Circuit to consider on remand."); *see also Ford v. Pliler*, 590 F.3d 782, 784 (9th Cir. 2009); *Harris*, 515 F.3d

---

**[6]** The two specific warnings we required related to our stay-and-abeyance procedure, which allows a petitioner to exhaust claims in state court without missing AEDPA's statute of limitations.

> [T]he Ninth Circuit held that if a *pro se* prisoner files a mixed petition, the district court must give two specific warnings regarding the stay-and-abeyance procedure: first, that "it would not have the power to consider [a prisoner's] motions to stay the [mixed] petitions unless he opted to amend them and dismiss the then-unexhausted claims," and, second, if applicable, "that [a prisoner's] federal claims would be time-barred, absent cause for equitable tolling, upon his return to federal court if he opted to dismiss the petitions 'without prejudice' and return to state court to exhaust all of his claims."

*Pliler*, 542 U.S. at 231 (quoting *Ford*, 330 F.3d at 1092–93) (citations omitted and alterations in *Pliler*).

at 1056; *Brambles v. Duncan*, 412 F.3d 1066, 1070 (9th Cir. 2005).

On remand, the panel majority concluded that Ford was not affirmatively misled by the district court's statement that he had the option "to dismiss his [mixed] petitions without prejudice and then, after exhausting in state court the previously unexhausted claims, to refile in federal court." *Ford*, 590 F.3d at 784–85. The majority relied heavily on the fact that the Court had previously reviewed this case and rejected the idea that the district court was required to give specific advisements. *Id*. at 787–88 (noting that "[t]he Court was explicit in holding that the door was open to Ford only for a claim that he had been affirmatively misled 'quite apart from the District Court's failure to give the two warnings'" and that "*Pliler* does not leave us room to rule otherwise" (citation omitted)). The majority concluded that, although Ford's subsequent federal habeas petition would necessarily have been untimely, it was nonetheless accurate for the district court to have used the term dismissal "without prejudice." *Id*. at 788–89 (noting that in *Brambles*, 412 F.3d at 1068–70, "we explained that the court presented 'accurate options,' one of which was dismissal without prejudice, even though the options were given 'twelve days after the AEDPA's one-year statute of limitations had expired'").[7]

---

[7] We note that the district court in *Brambles* provided an explicit warning to the petitioner to avoid misleading him as to the statute of limitations. In reference to the petitioner's options in proceeding with his mixed petition, the district court informed the petitioner that he could:

> Request this [c]ourt to dismiss the current petition without prejudice to any right petitioner may have to file a new petition once available state remedies are exhausted as to all claims. (**Petitioner is cautioned**

Limited by the Court's specific rejection of Ford's argument that the district court should have advised him differently, the majority reasoned that "[i]n order to show that he was affirmatively misled, Ford needed to point to some inaccuracy in the district court's instructions" to him, not merely to his "misunderstanding of accurate information." *Id*. at 788–89.

*Ford* and *Brambles* do not control the outcome here. Unlike the petitioners in those cases, Sossa has pointed to an inaccuracy in the court's instructions. Sossa premised his request to extend the time for filing an amended petition on the understanding that if the request were granted and Sossa filed his amended petition by the new due date, the petition would be deemed timely. (No litigant, *pro se* or otherwise, asks for an extension of time to file an *untimely* petition.) By granting Sossa's request and setting the new deadline as June 9, 2008, the magistrate judge conveyed that the premise of Sossa's request was accurate. But the premise, of course, was not accurate. Thus, the magistrate judge's order granting Sossa's extension request affirmatively misled him in the very manner that the Supreme Court's decision in *Pliler v. Ford*, and our decisions in *Ford* and *Brambles*, require.

The Fifth Circuit faced similar circumstances in *Prieto v. Quarterman* and granted the petitioner equitable tolling. The Fifth Circuit explained:

---

> **that recently amended 28 U.S.C. § 2244 limits the time period within which a petition may be filed.**)
> (emphasis in original).

*Brambles*, 412 F.3d at 1068–69.

The district court issued an order appointing counsel for Prieto and setting filing deadlines. Under the court's scheduling order, Prieto's habeas petition was due by May 3, 2002. On April 16 Prieto moved for, and the district court granted, an extension of time to file his habeas petition. Under the district court's order, Prieto's petition was due by September 6, 2002. On August 2, 2002, more than a month before that deadline, Prieto filed his habeas petition. The State responded with a motion to dismiss on the ground that Prieto's petition was untimely because he filed it after the applicable limitations period expired.

*Prieto v. Quarterman*, 456 F.3d 511, 513 (5th Cir. 2006). Under AEDPA, "to be timely, Prieto had until approximately the end of April 2002 to file for federal post-conviction relief. Instead, Prieto filed his habeas petition almost 100 days late, on August 2, 2002." *Id*. at 514.

The Fifth Circuit held that these "circumstances are sufficiently rare and exceptional to warrant equitable tolling." *Id*. The court reasoned that "[a]lthough AEDPA applied to Prieto's application, the district court's order granting him additional time for the express purpose of filing his petition at a later date was crucially misleading." *Id*. at 515. The text of the district court's order there almost exactly parallels that of the magistrate judge's order here. "The district court granted Prieto's motion, stating '[b]efore the Court is Petitioner's Motion for Extension of Time to [File] [a] Writ of Habeas Corpus. The Court finds that the motion is meritorious and it is GRANTED. Petitioner's writ of habeas corpus shall be filed no later than September 6, 2002.'" *Id*.

at 514 (first and second alterations in original).  Thus, the Fifth Circuit held that "the district court erred in not granting equitable tolling of the [AEDPA] statute of limitations."  *Id*. at 516.

The State first argues that the *Prieto* court failed to apply the Supreme Court's then-recent decision in *Day*, 547 U.S. 198, which held that a district court could *sua sponte* raise the untimeliness of a habeas petition where the State had failed to do so.  This argument is inapposite.  *Day* merely restated that "'[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants,'" *id*. at 210 (quoting *Pliler*, 542 U.S. at 231), and said that a court has "no obligation" to "doublecheck the State's math," *id*. at 209–10.  However, the lack of any such obligation does not free the district court to mislead a petitioner.  The Court's holding has no bearing on the question of whether a district court's affirmative extension of a filing deadline misled a petitioner.**[8]**  Moreover, the Fifth Circuit continues to cite *Prieto* with approval.  *See Mathis v. Thaler*, 616 F.3d 461, 475 n.15 (5th Cir. 2010); *United States v. Petty*, 530 F.3d 361, 367 n.9 (5th Cir. 2008) (noting that *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir. 1998) held the same as *Prieto*).

---

**[8]** Indeed, even in *Day*, the Court was careful to point out that where the timeliness issue was not initially raised, the district court "must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and determine whether the interests of justice would be better served by addressing the merits."  547 U.S. at 210 (internal quotation marks omitted).  Here, Sossa was significantly prejudiced by the State's failure to raise the timeliness issue until *after* the magistrate judge had extended the filing deadline on which Sossa relied.

The State then argues on policy grounds that *Prieto* was otherwise wrongly decided.**[9]** The State contends that *Prieto*'s holding places an "enormous burden . . . on federal magistrate judges and district courts" because it forces them to "continuously calculate the AEDPA timeliness of every federal habeas petition until final judgment." But there's no evidence that the Fifth Circuit has encountered such an unholy burden. Indeed, part of the Fifth Circuit's rationale was that a court order extending a habeas filing deadline beyond the AEDPA's statute of limitations, and a habeas petitioner's reliance on the court's deadline to miss the AEDPA deadline, was "sufficiently rare and exceptional to

---

**[9]** The State also argues that *Harris* and *Johnson v. Quarterman* resolve the issue presented. *See Harris*, 515 F.3d 1051; *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007). We disagree. In *Harris*, we held that a petitioner was entitled to equitable tolling when he relied on a Ninth Circuit case that was later overruled by the Supreme Court. *Harris*, 515 F.3d at 1052. Sossa presents a distinctly different question. As relevant here, the import of *Harris* is that we interpreted the controlling Supreme Court case to mean "that equitable tolling would likely be appropriate in at least some situations where a petitioner is affirmatively misled by a district court." *Id*. at 1056. We did not address and we have never ruled on whether extending a filing deadline beyond the statutory deadline constitutes an "affirmatively misle[ading]" act.

*Johnson* is inapposite. There, petitioner's counsel missed the AEDPA filing deadline. In seeking equitable tolling, counsel argued that he relied on the State's attorney's agreement to extend the deadline. *Johnson*, 483 F.3d at 287. The Fifth Circuit rejected this argument, explaining that "Johnson's counsel must have known that an attorney for the State has no authority to extend the statutory deadline established by Congress." *Id*. Under the circumstances, where Johnson's counsel had nine months to file, waited until the last moment, and then relied on an agreement with the State (that the State denied making) when he missed the deadline, the Fifth Circuit held that Johnson was not misled and therefore not entitled to equitable tolling. *Id*. at 287–88.

warrant equitable tolling." *Prieto*, 456 F.3d at 514. The fact that we have never squarely addressed this issue is further evidence that such a flood-gates argument is a non-starter.

Nor is the State's logic sound. First, Sossa offers a compelling alternative to the State's crisis scenario; namely that the magistrate judge could easily have avoided any reliance by including in the order a disclaimer stating "that by granting the . . . extension, the court was making no finding or representation that the petition was not subject to dismissal as untimely." This added clarification would place no additional burden on the district courts and would eliminate a petitioner's otherwise valid reliance on the court's extension of time.

Second, a district court need not undertake a statute of limitations analysis each time a petitioner requests an extension of time to file a habeas petition. Rather, it should be the State's responsibility to object to an extension of time beyond the statutory deadline if it intends to seek dismissal of the petition as untimely. Under the State's logic, the State may lie in wait while a district court extends a filing deadline, and only thereafter oppose a petition as untimely once it has been filed within the time allowed by the court. In most circumstances, the State easily could point to the face of the petition, which, as here, includes the relevant dates of decision and raise the matter of timeliness in opposing a petitioner's request for an extension of time.[10]

---

[10] We recognize that Sossa's second motion to extend the filing date was labeled as an "ex parte" motion. The record is not clear whether the State was informed of the filing, and the magistrate judge granted the extension on the same day the motion was filed. But, this fact has no bearing on our conclusion that Sossa reasonably relied on the magistrate judge's orders,

We conclude that the magistrate judge's orders affirmatively led Sossa to believe that he had until June 9, 2008 to file his FAP. Sossa's reliance on these orders entitles him to equitable tolling of the statute of limitations from March 12, 2008 through June 9, 2008.

Our analysis does not end here because Sossa did not file his FAP until June 11, 2008—two days after the magistrate judge's deadline.[11] Thus, we turn to the question of whether Sossa is entitled to additional equitable tolling.

### B.  Inability to access library and resources

With respect to these final two days, we hold that Sossa sufficiently alleged that he was precluded from filing his habeas petition because of his inability to utilize the prison's law library and other resources such that further development of the record is warranted to address this issue. Therefore, we remand to the district court for further proceedings to determine whether Sossa is eligible for equitable tolling on that ground and also whether he was entitled to the statutory tolling to which the magistrate judge assumed he was for purposes of his ruling.

The magistrate judge dismissed Sossa's original habeas petition on March 12, 2008, because Sossa failed to attach the

---

although we recognize that the State may not have been fully aware of Sossa's motion. In any event, the magistrate judge could have avoided creating a reliance interest by including a statement in the order as noted *supra* in the text.

[11] We reject the State's argument that Sossa's two-day delay in filing renders the logic of *Prieto* inapplicable. There is little question here that Sossa was aware of and sought to meet the June 9, 2008 deadline.

actual petition containing his claims. Sossa filed his FAP on June 11, 2008. In his R&R finding the FAP untimely, the magistrate judge found that Sossa was not entitled to equitable tolling due to lock-downs and lack of access to the law library. In his motion for discovery after the magistrate judge issued the R&R, Sossa specifically sought documents reflecting prison lock-downs for periods including "March 15, 2008 thru May 30, 2008." The magistrate judge denied this discovery request on the ground that it would not lead to relief for Sossa because "institutional lockdowns generally do not constitute extraordinary circumstances that warrant the granting of equitable tolling." Although under different circumstances we have concluded that "[o]rdinary prison limitations on [a prisoner]'s access to the law library and copier . . . [are] neither 'extraordinary' nor made it 'impossible' for [a particular prisoner] to file his petition in a timely manner," *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (internal citations omitted), the record does not allow us to conclude that here.

Here, Sossa sufficiently alleged that prison authorities made it impossible for him to file his habeas petition by the June 9, 2008 deadline. Because Sossa's allegations warrant further development of the record, we must remand to the district court for further proceedings. *See Lott v. Mueller*, 304 F.3d 918, 925–26 (9th Cir. 2002) (remanding for further proceedings where "Lott's allegations, if uncontroverted, require an application of equitable tolling"). Sossa's allegations include the following:

On March 19, 2008, Sossa filed a grievance form complaining that even an inmate with "priority legal user" status is limited to three days of library access per week and that due to his work schedule, Sossa would be permitted only

one day of weekly access. His request for a rule change was denied. Sossa then applied for "priority legal user" status (available to inmates with pending filing deadlines of 30 days or less), once the court had set the June 9 filing deadline. He stated that he applied for that status on or about May 13, 2008, but that two weeks of lock-downs ensued and he was never called to the law library. He further stated that the prison lost his "priority legal user" paperwork and only allowed him to access the law library on Saturday, June 7, 2008—two days before his petition was due. Finally, Sossa stated that on that date he "attempted to haphazardly throw together [his] amended petition but as [he] received [his] copies, pages were missing as the copy machine mis-stepped. This was Saturday June 7th 2008 and [the law] library would not open again until Tuesday June 10th 2008. . . . At this juncture [he] appealed to the court (U.S. District Court) for an emergency extension of 5 days." That emergency motion was rejected and ordered "not filed" by the magistrate judge on June 11, 2008, and thus we are not privy to any additional allegations it may have contained.

If the evidence supports Sossa's allegations that prison conditions made filing the petition prior to the June 9 impossible, the prison's provision of last-minute access to the law library on June 7 does not undermine Sossa's claim to equitable tolling through June 11. *See id.* at 922–23 (finding that were an inmate to have "reasonably believed that his filing deadline would be upon him in six days" after having had his legal materials returned to him after six weeks without them, "[s]uch a fleeting period could have made a timely filing by a pro se prisoner literally impossible" (citing *Rand v. Rowland*, 154 F.3d 952, 958 (9th Cir. 1998) (en banc))). Indeed, as we have previously said, the "impossibility" requirement should not be strictly imposed

because "imposing extraordinarily high evidentiary standards on pro se prisoner litigants—who have already faced an unusual obstacle beyond their control during the AEDPA limitation period—runs against the grain" of our precedent. *Id*. at 924; *see Rand*, 154 F.3d at 958 (concluding that "affirmative measures are sometimes required to ensure that a prisoner's access to the courts is 'adequate, effective, and meaningful'" (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977))); *see also Holland*, 130 S.Ct. at 2563 (emphasizing that "often the exercise of a court's equity powers . . . must be made on a case-by-case basis . . . [and that courts must be aware] of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case" (internal quotations and citations omitted)).

Therefore, "[b]ecause determinations of . . . whether there are grounds for equitable tolling are highly fact-dependent, and because the district court is in a better position to develop the facts and assess their legal significance in the first instance, we believe the best course is to remand to the district court for appropriate development of the record." *Whalem/Hunt*, 233 F.3d at 1148.**[12]**

---

**[12]** In its answering brief, the State argued that Sossa was not entitled to equitable tolling on the basis of prison lock-downs and access to the law library. However, the State declined to brief the question of whether Sossa was entitled to a remand based on the same evidence and allegations. Rather, the State construed this remedy as beyond the scope of the COA. We disagree. The COA clearly granted Sossa leave to appeal "whether the district court properly dismissed appellant's amended 28 U.S.C. § 2254 petition as untimely." The COA does not limit our remedy here, and Sossa's argument did not constitute an "uncertified" issue. Therefore, Ninth Circuit Rule 22-1(f) does not require that we afford the State an additional opportunity to respond to this argument.

## IV.  CONCLUSION

We hold that Sossa is entitled to equitable tolling through June 9, 2008, because he reasonably relied on the magistrate judge's orders extending his habeas filing deadline beyond AEDPA's statutory deadline.  We further hold that Sossa's allegations regarding his access to the law library and other resources may entitle him to equitable tolling through June 11, 2008, when he constructively filed his amended habeas petition.

We reverse the district court's judgment dismissing Sossa's habeas petition as untimely.  We remand for further development of the record, including an evidentiary hearing if warranted,[13] to determine whether Sossa is eligible for equitable tolling from June 9 to June 11, 2008, and whether he is entitled to statutory and/or gap tolling for the time period covering his state court collateral proceedings.

**REVERSED AND REMANDED.**

---

[13]  We note that the district court may expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts.  If after reviewing any documents submitted pursuant to Rule 7, the court determines that an evidentiary hearing is necessary, it may hold one as allowed by Rule 8.